**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION**

| | |
|---|---|
| **BOBBIE J. IVEY,** § | |
| § | |
| Plaintiff, § | |
| § | |
| vs. § | Civil Action No. **1:05-CV-0123-C** |
| § | **ECF** |
| § | **Referred to the U.S. Magistrate Judge** |
| **JO ANNE B. BARNHART,** § | |
| **Commissioner of Social Security,** § | |
| § | |
| Defendant. § | |

**REPORT AND RECOMMENDATION**

**THIS MATTER** is before the court upon Plaintiff's complaint filed June 30, 2005, for judicial review of the administrative decision of the Commissioner of Social Security denying Plaintiff's applications for a period of disability and disability insurance benefits and for supplemental security income benefits under Title II and Title XVI of the Social Security Act. Plaintiff filed a brief in support of her complaint on October 31, 2005, and Defendant filed her brief on November 29, 2005. The United States District Judge, pursuant to 28 U.S.C. § 636(b), referred this matter to the United States Magistrate Judge for report and recommendation, proposed findings of fact and conclusions of law, and a proposed judgment. This court, having considered the pleadings, the briefs, and the administrative record, recommends that the United States District Judge affirm the Commissioner's decision and dismiss the complaint with prejudice.

**I.    STATEMENT OF THE CASE**

Plaintiff filed applications for a period of disability and disability insurance benefits and for supplemental security income benefits on April 4, 2001, with a protective filing date of February 21,

2001, for her SSI application, alleging disability beginning January 12, 2001. Tr. 15, 61-63. Plaintiff's applications were denied initially and upon reconsideration. Tr. 25-31, 35-38, 292-98, 300-02. Plaintiff filed a Request for Hearing by Administrative Law Judge on January 11, 2002, and this matter came for hearing before the Administrative Law Judge ("ALJ") on September 24, 2003. Tr. 15, 39, 303-40. Plaintiff, represented by an attorney, testified in her own behalf. Tr. 306-19, 331-33. Dr. George Weilepp, a medical expert ("ME") and Carol Bennett, a vocational expert ("VE"), appeared and testified as well. Tr. 15, 320-30, 334-39. The ALJ issued a decision unfavorable to Plaintiff on October 30, 2003. Tr. 12-22.

In his opinion the ALJ noted that the specific issue was whether Plaintiff was under a disability within the meaning of the Social Security Act. He found that: Plaintiff met the disability insured status requirements. Tr. 16, 21. Plaintiff had not engaged in substantial gainful activity at any time since January 12, 2001. *Id*. Plaintiff has "severe" impairments, including pain in her back, hip, and thighs. *Id*. Plaintiff's severe impairments, singularly or in combination, were not severe enough to meet or equal in severity any impairment listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpt. P, App. 1. *Id*. Therefore, the ALJ was required to determine whether Plaintiff retained the residual functional capacity ("RFC") to perform her past relevant work or other work existing in the national economy.

The ALJ acknowledged that in making the RFC assessment, he must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with the objective medical evidence and other evidence, based on the requirements of Social Security Ruling 96-7p. Tr. 18.

The ALJ discussed the testimony of the ME, noting his testimony that Plaintiff's basic problem is obesity, with orthopedic-related problems, including a pain problem, anemia, calcium problems, parathyroid hyperactivity, non-diagnostic osteoporosis, and hypertension controlled by

medications.  Tr. 16.  The ALJ discussed Dr. Weilepp's testimony about the objective evidence in the record, as well as his testimony about the limitations imposed by Plaintiff's impairments, including her narcotic level medication and any side effects therefrom.  Tr. 17.  The ALJ also noted his questioning and Plaintiff's testimony regarding her use of a cane, her lack of insurance, and her lack of psychiatric or psychological care.  Tr. 17-18.

The ALJ indicated that he had considered the opinions of the state agency medical consultants, who opined that Plaintiff's impairments did not preclude work at the light exertional level.  Tr. 18.  The ALJ noted that he had given great weight to the opinion of the ME.  *Id.*

The ALJ discussed Plaintiff's testimony regarding the limitations imposed by her impairments and as to her activities.  Tr. 19.  He noted that Plaintiff had alleged that she was unable to perform any type of work activity.  *Id.*  He found that based on the evidence in the record, Plaintiff's statements concerning her impairments and their impact on her ability to work were not entirely credible, insofar as she alleged that she was precluded for all levels of work activity.  Tr. 19, 21.  The ALJ also found that Plaintiff's depression would not limit her from performing tasks of one or two steps, specifically noting her failure to take reasonable efforts to pursue treatment for her mental impairment.  Tr. 19.

The ALJ found that Plaintiff could not return to her past relevant work as a telephone answering service operator.  Tr. 15, 19, 22.  He noted that Plaintiff was considered a "younger" person with a high school education.  Tr. 20, 22; *see* 20 C.F.R. §§ 416.963, 416.964.

The ALJ found that Plaintiff retained the RFC to perform work activity at the sedentary level of exertion, limited to jobs that do not require more than occasional stooping, crouching, crawling or kneeling; that do not require climbing or balancing; that do not require working at unguarded heights or near unguarded hazardous mechanical equipment; that do not require sitting for more than 30 minutes at one time without the opportunity to stand in addition to a lunch and the

normal legal breaks during the work day; that do not require standing/walking for more than 1 hour out of an 8-hour work day; that do not require Plaintiff to maintain fixed concentration and attention for periods of longer than 20 minutes without the opportunity to briefly refocus for a minute or two and come back to fixed concentration; and that do not require understanding, remembering, or carrying out more than simple instructions while in the performance of job duties.  Tr. 19, 22. Having found that Plaintiff could not perform the full range of sedentary work, the ALJ turned to the testimony of the VE in determining whether Plaintiff was capable of making a vocational adjustment to other work despite her severe impairments.  Tr. 20, 22.

The ALJ relied upon the testimony of the VE who indicated that a hypothetical person of Plaintiff's age, with Plaintiff's RFC and vocational history, could perform work which exists in the national economy, including the jobs of assembler, with 4,400 jobs in Texas and 80,000 jobs nationally; and inspector, with 1,500 jobs in Texas and 25,000 jobs nationally.  *Id*.  The ALJ, therefore, concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time through the date of his decision.  Tr. 21-22.

Plaintiff submitted a Request for Review of Hearing Decision/Order on November 3, 2003. Tr. 9-11.  After granting a 25-day extension to submit more evidence, the Appeals Council issued its opinion on June 3, 2005, indicating that although it had considered the contentions raised in Plaintiff's Request for Review, it nevertheless concluded that there was no basis for changing the ALJ's decision and denied Plaintiff's request.  Tr. 4-8.  The ALJ's decision, therefore, became the final decision of the Commissioner.

On June 30, 2005, Plaintiff commenced this action which seeks judicial review of the Commissioner's decision that Plaintiff was not disabled.

## II.   STANDARD OF REVIEW

An individual may obtain a review of the final decision of the Commissioner by a United States District Court. 42 U.S.C. § 405(g).  The court's review of a denial of disability benefits is limited to determining whether the decision is supported by substantial evidence and whether the Commissioner applied the proper legal standards. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002)(citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)). Substantial evidence "is more than a mere scintilla and less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002).  The court will not re-weigh the evidence, try the questions *de novo*, or substitute its judgment for the Commissioner's, even if the court believes that the evidence weighs against the Commissioner's decision. *Masterson,* 309 F.3d at 272. "[C]onflicts in the evidence are for the Commissioner and not the courts to resolve."  *Id.* (quoting *Newton v. Apfel,* 209 F.3d 448, 452 (5th Cir. 2000)).

In order to qualify for disability insurance benefits or supplemental security income, a claimant has the burden of proving that he or she has a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity.  Substantial gainful activity is defined as work activity involving significant physical or mental abilities for pay or profit. *Newton,* 209 F.3d at 452; *see* 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1527(a)(1).

The Commissioner follows a five-step process for determining whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. § 404.1520; *Masterson*, 309 F.3d at 271; *Newton*, 209 F.3d at 453.  In this case, the ALJ found at step 5 that Plaintiff was not disabled because she retained the ability to perform work in the national economy.  Tr. 20, 22.

### III.   DISCUSSION

Plaintiff claims that the ALJ's determination of Plaintiff's RFC is not supported by substantial evidence because the ALJ improperly rejected the opinion of the consultative examiner as to the limitations imposed by Plaintiff's impairments.  She alleges that the ALJ erred in rejecting in part Dr. Jerome M. Adams' opinion that Plaintiff's ability to handle objects would be "essentially nil."  She notes that the jobs identified by the VE, as listed in the *Dictionary of Occupational Titles*, require either constant or frequent fingering.

The ultimate issue is whether the ALJ's decision is supported by substantial evidence.  The court, therefore, must review the record to determine whether it "yields such evidence as would allow a reasonable mind to accept the conclusion reached by the ALJ." *Loza v. Apfel,* 219 F.3d 378, 393 (5th Cir. 2000).

Dr. Adams performed his consultative examination on August 24, 2001. Tr. 233-35.  He noted that Plaintiff had related the onset of her impairment to about 3 1/2 years ago.  Tr.  233.  He noted Plaintiff's report of a history of low back pain radiating down the right hip and thigh since then.  *Id*.  He noted Plaintiff's report of not being able to do her job because she had to stand a lot, her report of being unable to drive because of right hip and back pain, and her inability to safely handle the brake and accelerator pedals on the car.  *Id*.  He noted Plaintiff's report of being able to sit about 15-20 minutes and then standing or walking for about 15 minutes before needing to change positions.  *Id*.  Upon physical examination, Dr. Adams noted that Plaintiff moved slowly and cautiously and had difficulty with getting up onto the exam table.  *Id*.  Dr. Adams noted that examination of Plaintiff's upper extremities revealed that she was able to come to almost a full range of motion of the shoulders in abduction and internal and external rotation.  Tr. 234.  He noted that Plaintiff had "fairly good bilateral handgrip and fair strength at the elbows."  *Id*.  He also noted no joint deformities or muscle atrophy.  *Id*.

Dr. Adams noted that Plaintiff appeared to experience pain in changing positions. *Id*. He noted that Plaintiff had a lot of pain with any movement of the right hip and also noted pain in the left hip to a lesser degree. *Id*. He noted that Plaintiff walked with a stiff gait and used a cane in the left hand. *Id*.

Dr. Adams noted Plaintiff's report of being able to use clothes that are easily handled and her ability to dress herself fairly well. *Id*. He opined that Plaintiff "would no way be able to function in the work place in that her ability to sit and stand for any length of time is very limited. Her ability to move about, handle objects, lift and carry objects would essentially be nil." Tr. 235.

Plaintiff argues that the ALJ erred in rejecting Dr. Adams' opinion insofar as he opined that her ability to hand objects "would essentially be nil." In his opinion the ALJ correctly noted that the reports of Dr. Adams' consultative examination revealed fairly good bilateral handgrip, fair strength at the elbows, and no joint deformity or muscle atrophy of the upper extremities, and he noted Plaintiff's ability to grip and use a walking cane. Tr. 20-21, 233-34. Plaintiff argues that the ALJ was not entitled to "pick and choose" among the evidence and erred by only accepting Dr. Adams' opinion in part. Plaintiff argues that the ALJ was not entitled to accept only some of the restrictions noted by Dr. Adams in his opinion.

Plaintiff's treating physician, Mark Workman, M.D., noted on December 4, 2000, that she had intact strength and absent reflexes. Tr. 287. On February 7, 2001, Marlon L. Hermitanio, M.D., noted that upon examination, Plaintiff's extremities showed no edema, cyanosis, or clubbing, with palpable pedal pulses, and he noted deep tendon reflexes of 2+ on all four extremities. Tr. 283. Plaintiff's physical therapist noted on February 12, 2001, that Plaintiff was using a cane with her right upper extremity to ambulate. Tr. 184. Dr. Workman noted on March 23, 2001, that Plaintiff's physical therapist had given her a walker. Tr. 279. Dr. Hermitanio again noted no edema, cyanosis, or clubbing of the extremties on April 19, 2001. Tr. 221. Plaintiff's physical therapist noted on

April 25, 2001, that Plaintiff had reported that she was able to walk with a cane at home.  Tr. 191. Plaintiff was noted to be progressing overall, albeit slowly.  *Id.*  On May 1, 2001, Magdi M. Tadros, M.D., another treating physician, noted that Plaintiff's pulses were present in her extremities and further noted no edema.  Tr. 157.  Dr. Tadros noted on May 29, 2001, that there were no abnormalities with Plaintiff's extremities.  Tr. 155.  Dr. Hermitanio noted on July 26, 2001, that Plaintiff continued to have difficulty standing up from a sitting position or getting out of bed and was using a cane to ambulate.  Tr. 218.  Cindy Harris, M.D., who examined Plaintiff on April 17, 2003, noted upon physical examination that Plaintiff has normal peripheral reflexes in the extremities.  Tr. 254.

Plaintiff testified that:  She can cook simple things.  Tr. 310.  She tries to do her own laundry and tries to help with the dusting and the picking up.  Tr. 311.  Pain is in her lower back and hips. Tr. 314.  She uses a walker if she knows she going to be out for longer periods.  *Id*.  She began using a cane in 1999.  Tr. 319.

Ultimately, it is the ALJ's responsibility to determine a claimant's RFC, and such an assessment is not a medical opinion.  *See* 20 C.F.R. §§ 416.946, 416.927(e).  The ALJ is not required to incorporate any specific limitations into his RFC assessment simply because it appears in a medical opinion.  Rather, the ALJ has the sole responsibility for weighing the evidence, may choose whichever physician's diagnosis is most supported by the record, and may incorporate into the RFC assessment the limitations supported by that diagnosis or diagnoses.  *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991)(citing *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987)).  "The task of weighing the evidence is the province of the ALJ.  *Chambliss v. Massanari*, 269 F.3d 520, 523 (5th Cir. 2001).  The relative weight to be given these pieces of evidence is within the ALJ's discretion. *Id.* Clearly, "the ALJ cannot reject a medical opinion without an explanation."  *Loza*, 219 F.3d at 395.  Moreover, in weighing the evidence, the ALJ is not free to reject the uncontroverted opinions

of a treating physician as to the limitations imposed by Plaintiff's impairments, solely because he has a "different interpretation of the evidence." *See Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003)(where the Fifth Circuit noted in dicta that the ALJ should not substitute his own medical conclusions about the effects of the claimant's impairments).

In his opinion the ALJ specifically discussed his reasons for rejecting Dr. Adams' opinion that Plaintiff's ability to handle objects would be "essentially nil." Tr. 20-21. The ALJ correctly noted that Dr. Adams' opinion was not supported by his own records and notes of the consultative examination. *Id*. Indeed, the record contains no evidence indicating that Plaintiff's ability to handle objects was extremely limited. The record demonstrates that she used a cane, and at times a walker, to ambulate. Strength in the upper extremities was noted to be good. No cyanosis, clubbing, edema, muscle atrophy, or deformities were noted. Plaintiff testified that she did some cooking, dusting, laundry, and for the most part dressed herself and performed her own personal hygiene tasks. The record is devoid of evidence demonstrating that Plaintiff was unable to handle objects.

Here, the ALJ adequately explained his reason for rejecting Dr. Adams' opinion that Plaintiff's was unable to handle objects and demonstrated good cause for doing so. In *Newton*, the Fifth Circuit confirmed that "'the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion.'" *Newton*, 209 F.3d at, 455 (*citing Paul v. Shalala*, 29 F.3d 208, 211 (5th Cir. 1994)). The record demonstrates that the ALJ did not "pick and choose" only the evidence that supported his position. *See Loza*, 219 F.3d at 393 (internal citations omitted). Rather, the ALJ appropriately considered the record as a whole. *Id.*

I find that the ALJ did not err by rejecting Dr. Adams' opinion that Plaintiff's ability to handle objects would be "essential nil," and his opinion is supported by substantial evidence in the record.

### IV.  CONCLUSION

Based upon the foregoing discussion of the issues, the evidence, and the law, this court recommends that the United States District Judge affirm the Commissioner's decision and dismiss the Plaintiff's complaint with prejudice.

The United States District Clerk shall serve a true copy of these findings, conclusions, and recommendation on the parties.  Pursuant to Title 28, United States Code, Section 636(b)(1) and Rule 4 of Miscellaneous Order No. 6, For the Northern District of Texas, any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within 11 days after being served with a copy.  A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made.  The District Court need not consider frivolous, conclusory, or general objections.  A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a *de novo* determination by the District Court.  *See Thomas v. Arn*, 474 U.S. 140, 150, 106 S. Ct. 466, 472 (1985).  Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within 11 days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the United States Magistrate Judge that are accepted by the District Court, except upon grounds of plain error.  *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

DATED this 1st day of September, 2006.

_____
**PHILIP R. LANE**
**UNITED   STATES   MAGISTRATE   JUDGE**